**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BRADLEY DEWAYNE SPORTSMAN,**

**Plaintiff,**

**v.**                                                    **CASE NO. 24-3103-JWL**

**DARCIE HOLTHAUS,  et al.,**

**Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Bradley Dewayne Sportsman is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**1.  Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Ellsworth Correctional Facility in Ellsworth, Kansas ("ECF").  The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that he was recommended for shoulder surgery after a December 2022 CT-scan showed significant bony overgrowth of "the anterior portion." (Doc. 1, at 2.)  Plaintiff alleges that he has been given many excuses as to why the recommended surgery has been denied, including excuses based on Plaintiff's headaches and seizures. *Id*.  Plaintiff alleges that he has had the headaches and seizures for years, and has had numerous surgeries with no surgical complications. *Id*.

Plaintiff claims that Darcie Holthaus, Secretary of Corrections, was the person tasked with final approval of the surgery. *Id*. at 1.  Plaintiff alleges that Warden Langford was made aware of

the situation through Plaintiff's grievances, and took to action to remedy the situation. *Id*. at 2.

Plaintiff alleges an Eighth Amendment violation based on the denial of his requests for shoulder surgery. *Id*. at 3.  Plaintiff names as defendants:  Darcie Holthaus, KDOC Secretary of Corrections; and Donald C. Langford, ECF Warden.  For relief, Plaintiff seeks injunctive relief in the form of an order for "immediate surgery," and compensatory damages for "pain and suffering." *Id*. at 5.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff has attached the responses to his grievances regarding his shoulder surgery.  On January 2, 2024, the Warden responded to Plaintiff's grievance indicating that Plaintiff had been advised that he has not been denied for surgery, "but there are steps that may need to be taken prior to a surgery being approved."  (Doc. 1–1, at 3.)  The Warden noted that medication changes were made in November 2023 based on recommendations, and that "repeat labs will be conducted in order to observe the results of those medication changes."  *Id*.  The Warden stated "I understand that sometimes these processes are lengthy and may seem unnecessary, but these processes are in place for your safety."  *Id*.

On February 23, 2024, Darcie Holthaus, Secretary of Corrections Designee, responded to Plaintiff as follows:

> The Kansas Department of Corrections Medical Health Authorities reviewed the correspondence, site response, behavioral health review and EHR.  This resident is alleging delay of care for needed shoulder surgery.  He had a shoulder injury approximately 16 years ago and reportedly had a shoulder arthroplasty with implant.  He had a lot of dislocations after that, resulting in a full shoulder replacement in 2014.
>
> Approximately 2 years ago, he fell, landing on his right shoulder and hip.  He had a significant contusion and felt a pop in the shoulder when he fell.  He has had problems with pain and limitation of motion since then.  He was referred for orthopedic consult in June 2023. . . .
>
> The orthopedist he saw felt that a revision procedure of the shoulder arthroplasty might be in order but felt unqualified to do

that.  He suggested referral to a shoulder specialist.  The regional director agreed that consultation for revision surgery would be appropriate, but in view of the resident's frequent headaches and seizure disorder, felt that neurological consultation beforehand would be appropriate to optimize his seizure control prior to attempting surgery.  His compliance with medication and seizure control have been suboptimal and the increased risk of surgical procedures requiring general anesthesia in seizure patients, [sic] he needed to have optimal control.

The resident saw neurology who felt that the seizures were inadequately controlled and increased his lamotrigine, requesting another level be drawn in 6 weeks to reassess.  Those levels were drawn and sent to the neuro office, but as of site response date, no response had been received.  The most recent lamotrigine level in the chart was 1.9 mcg/ml, which is only 2/3 of the minimum therapeutic level.

**CONCLUSIONS MADE BY CLINICAL REVIEWER:**

The resident was upset because the article he was shown regarding perioperative risk in patients with epilepsy undergoing total joint arthroplasty cited an increase in in-hospital mortality with an odds ratio of 2.03.  He interpreted that as a 2.3% increase in risk.  An odds ratio of 2.03 indicates a more than double risk, indicating a much more substantial risk than he understood.

His most recent lamotrigine level was only about 2/3 of the minimum therapeutic level, so it will require time to measure a fully therapeutic blood level.  Once that is done, the anesthesiologist and surgeon responsible for his care should feel more sanguine about proceeding.

It appears that the resident is receiving appropriate care for his condition.  It is unfortunate that it is taking some time to be completed, but the caution on assuring that his seizure disorder [sic] to avoid a doubling of his operative risk is certainly appropriate.

(Doc. 1–1, at 1.)

Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's

disagreement regarding the proper course of treatment.  Plaintiff has failed to show that any defendant

was deliberately indifferent to his medical needs.  Plaintiff has failed to show that Defendants

disregarded an excessive risk to his health or safety or that they were both aware of facts from

which the inference could be drawn that a substantial risk of serious harm existed, and also drew

the inference.  Based on the responses to his grievances, it appears that they are not disregarding a

risk to his health or safety.  Rather, Defendants are refusing to disregard the risk and are taking necessary precautions to ensure his safety.  An apparent disagreement over course of treatment does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

## IV.  Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **August 1, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated July 1, 2024, in Kansas City, Kansas.**

> **S/  John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**